GARY NUNES, Plaintiff, v. NORTHWEST HOSPITAL *et al.*, Defendants (Thomas R. Cirignani and Associates *et al.*, Petitioners-Appellees, v. Thomas Boyd, Respondent-Appellant).

First District (5th Division) No. 1—92—0307

Opinion filed September 10, 1993.—Rehearing denied October 15, 1993.

Parrillo, Weiss & O'Halloran, of Chicago (Michael J. O'Halloran and Keely Truax, of counsel), for appellant.

James C. Harman, of Thomas R. Cirignani & Associates, of Chicago, for appellees.

JUSTICE MURRAY delivered the opinion of the court:

The plaintiff, Gary Nunes (Nunes) brought the underlying medical malpractice action to recover for injuries allegedly occasioned by the negligence of the defendants. The case was tried before a jury, and a $1 million judgment was entered in favor of the plaintiff. Subsequently, the parties settled the dispute between themselves for $875,000. The judgment and dispute between the named plaintiff and the named defendants are not involved in this appeal. Neither Nunes nor the other parties to the underlying case have appeared in this appeal. After entry of the judgment, the plaintiff's trial attorney, Thomas R. Cirignani, requested and obtained a judgment for attorney fees, and the plaintiff's attorney, Thomas Boyd (Boyd), requested and was denied attorney fees under the attorney lien act. Boyd appeals from the attorney fee orders.

Boyd raises the following issues for review: (1) whether the trial court erred in denying his petition for a change of venue; (2) whether the trial court had subject matter jurisdiction over the attorney fees issues; (3) whether Thomas R. Cirignani or Thomas R. Cirignani & Associates perfected an attorney's lien; (4) whether Boyd perfected an attorney's lien; and (5) whether the judgment was against the manifest weight of the evidence.

The relevant facts are as follows.

On July 7, 1985, the plaintiff, Nunes, through his attorney Louis Goldstein (Goldstein), filed a complaint alleging medical malpractice in connection with treatment for a penile prosthesis against defendants Northwest Hospital, Widran Urological Group, Ltd., Dr. Jerold Widran, and Dr. Ramon Sanchez. On November 24, 1987, Thomas R. Cirignani (Cirignani) filed a motion to substitute as Nunes' attorney in place of Goldstein. Discovery continued and Cirignani tried the case

to verdict before a jury. On October 21, 1991, the jury rendered a verdict in favor of Nunes in the net amount of $1 million.

On December 16, 1991, Boyd served notice of an attorney lien on the defendant's insurer, Illinois State Medical Insurance Services, and on December 18, 1991, he served notice of an attorney's lien on Dr. Widran and Widran Urological Group, Ltd.

On December 17, 1991, (1) Boyd filed his petition for a change of venue from the trial judge, alleging the trial judge was prejudiced against him (Boyd had never made or filed an appearance in this matter prior to December 17, 1991); (2) Thomas Cirignani filed his motion for attorney fees and "Motion to Extinguish Purported Attorneys Lien of Thomas Boyd and Deny Attorneys Fees"; and (3) Nunes filed his "Petition of the Plaintiff for Adjudication of Claimed Attorney's Lien."

Nunes' petition for adjudication of the claimed attorney's lien was filed by special counsel for purposes of said petition. Plaintiff's petition alleged that after trial and verdict, an understanding was reached between the parties providing for a settlement and that said settlement had been thwarted by a claim for the full one-third of the settlement as fees by Cirignani, notwithstanding an agreement between Nunes, Boyd and Cirignani that the one-third would be divided one-third of the one-third to Boyd and two-thirds of the one-third to Cirignani. Attached to the plaintiff's petition was a contract signed by Nunes and Boyd on March 20, 1985, in which Nunes agreed to pay Boyd a contingent fee of one-third of any money recovered as a result of his malpractice claim. The petition further alleged that the court had jurisdiction to adjudicate a purported lien upon petition of the plaintiff.

Cirignani's motion to approve attorney fees alleged that he substituted for Goldstein as attorney for Nunes on November 11, 1987, and that Nunes agreed to pay him one-third of any recovery in this case as attorney fees. Cirignani alleged that at the time he entered the case, Goldstein's work had amounted to filing a complaint and written interrogatories and that Goldstein had signed a release for any attorney's lien he might have with regard to this matter. Cirignani asserted that after much negotiation following trial, the defendants' attorney offered Nunes $875,000 in settlement of this case and that said amount was authorized by Nunes on December 13, 1991. On that same date quittance documents were prepared and delivered to Cirignani for Nunes' signature. When Cirignani contacted Nunes in order to have the documents signed, Nunes, for the first time, explained to Cirignani that he had an attorney/client contract with Boyd

and that Boyd was attempting to enforce some sort of action for fees. Cirignani's motion to extinguish Boyd's attorney's lien argued that a fee-sharing agreement must comply with Rule 1.5(f) (134 Ill. 2d R. 1.5(f)), and no such agreement existed between Boyd and Cirignani.

On December 18, 1991, the trial court denied Boyd's petition for change of venue on the basis that "this is collateral to the total substantial matters in this case."

On December 19, 1991, Widran filed a motion to enforce a settlement in the amount of $875,000. On December 19, 1991, the plaintiff and Widran settled their case in open court for the sum of $875,000. An order was entered vacating the October 21, 1991, judgment of $1 million and defendants' motion to enforce the settlement was granted. All parties were ordered to sign appropriate releases and defendants were ordered to deposit the settlement funds in an interest-bearing escrow account and to disburse $546,294.77 to Nunes.

On December 19, 1991, the trial court commenced hearings on the motions and petitions concerning attorney fees. Under a motion to exclude witnesses, Nunes was barred from the courtroom, as he had received his portion of the settlement proceeds and the only issue was the apportionment of fees. The hearings were continued to December 20, 1991, January 9, 1992, and January 13, 1992. Thomas R. Cirignani, Paul Price, Louis Goldstein, Thomas Boyd, Mark Moynahan, Gary Nunes, John Marszalek, James Richard Hisaw, and John Barnes testified at the attorney fee hearings.

On December 30, 1991, the trial court found that Cirignani was entitled to $30,759.48 as reimbursement for expenses advanced in the prosecution of the case. The balance of funds withheld for the payment of costs and expenses, $6,279.09, was ordered to be disbursed to Nunes.

On January 13, 1992, the trial court granted Cirignani's petition for attorney fees in the amount of one-third of the settlement amount. Boyd's petition for fees was denied. On January 14, 1992, Nunes objected to the January 13, 1992, order by letter to the trial judge. Nunes "strenuously" objected to the decision to award Cirignani the sum of one-third of the proceeds of the settlement, because he had never had a contract with Cirignani, he had never been sued, and therefore, no judgment to pay any of Nunes' settlement proceeds could be properly entered.

On January 22, 1991, the trial court entered an order granting $291,666.66 in fees to Cirignani. The order stated: "the Court finds the purported attorney's lien of Thomas Boyd was filed after verdict was rendered and after settlement in this case reached." The court

ordered that the purported lien of Boyd was not perfected and was extinguished and held for naught. The trial court further found Nunes had voluntarily submitted to the jurisdiction of the court to adjudicate the attorney's lien of Cirignani as requested in his petition.

■ In his reply brief and at oral argument, Boyd raised the question of whether Cirignani's claim for fees was effected by section 2—1114 of the Code of Civil Procedure, which places a cap on contingent fee arrangements in malpractice cases.[1] (Ill. Rev. Stat. 1991, ch. 110, par. 2—1114.) Since this issue was first raised in the reply brief, this court allowed Cirignani the opportunity to file a response. Section 2—1114 became effective after the underlying malpractice case was filed, but prior to Cirignani's entry in the case. Boyd alleges that since Cirignani's fee was in excess of the statutory limit set forth in section 2—1114, Cirignani should be barred from recovering any fees. The statute was to effect cases filed after August, 15, 1985, and this case was filed on July 9, 1985, prior to the effective date. In addition, the statute allows a trial court to review contingent fee agreements for fairness and in special circumstances the attorney may apply to the court for approval of additional compensation. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1114(c).) We also note Nunes has never raised the issue that a one-third attorney fee was inappropriate. We do not feel that section 2—1114 precludes any recovery for Cirignani in this case. However, for the following reasons we find we must reverse and remand the case due to the trial court's failure to grant Boyd's petition for a change of venue and as a result we do not meet the merits of the remaining issues.[2]

Boyd and his attorney, Michael J. O'Halloran, filed their petition for change of venue immediately upon their formal entry into the case on December 17, 1991. Upon their first appearance before Judge Virgilio, and before a hearing was commenced or ruling was made in the attorney fees proceedings, Mr. O'Halloran and Boyd presented their petition for change of venue. The trial court denied the petition

---

[1]Section 2—1114 provides that the maximum contingent fee an attorney may recover in a medical malpractice action is "33⅓% of the first $150,000 of the sum recovered; 25% of the next $850,000 of the sum recovered; and 20% of any amount recovered over $1,000,000 of the sum recovered." (Ill. Rev. Stat. 1991, ch. 110, par. 2—1114(a), added by Pub. Act 84—7, §1, eff. August 15, 1985.) The Act took effect August 15, 1985, and applies to all cases filed on or after that date. Pub. Act 84—7, §2, eff. August 15, 1985.

[2]A review of the attorney fee proceedings raises disturbing ethical questions regarding referral agreements among attorneys; however, since we reverse on the issue of the change of venue, we also do not meet this issue.

for a change of venue finding that it was "collateral to the total substantial matters in this case." Boyd maintains since the petition for change of venue was in proper form, as well as timely filed and presented, it should have been granted.

The Code of Civil Procedure provides that a change of venue may be had in any civil action where a party or his or her attorney fears that he or she will not receive a fair trial in the court in which the action is pending because the judge is prejudiced against that party or attorney.[3] (Ill. Rev. Stat. 1989, ch. 110, par. 2—1001(a)(2).) The circuit court must award a change of venue if requested by petition in proper form before the judge has ruled on any substantial issue in the case. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1001(c); *In re Marriage of Betts* (1987), 155 Ill. App. 3d 85, 96, 507 N.E.2d 912, 919; *Rosewood Corp. v. Transamerican Insurance Co.* (1974), 57 Ill. 2d 247, 250, 311 N.E.2d 673.) A petition for a change of venue must be brought at the earliest practical moment. *In re Marriage of Birt* (1987), 157 Ill. App. 3d 363, 366, 510 N.E.2d 559, 562.

The Illinois Supreme Court stated in *In re Dominique F.* (1991), 145 Ill. 2d 311, 318-19, 583 N.E.2d 555:

"It is well settled that venue provisions are to be liberally construed, with an end toward effecting rather than defeating a change of venue, particularly where the impartiality of the trial judge is called into question. [Citation.] All civil litigants have an absolute right to a change of venue where a petition asserting general prejudice on the part of the trial judge is filed before trial or hearing and before the trial judge had made any substantive ruling in the case. [Citations.] The right is mandatory if made in apt time and in proper form, and a trial judge has no discretion to deny a timely and proper request. [Citation.] The petition need contain no specific allegations of prejudice; rather, a general allegation that the trial judge is preju-

---

[3]The legislature has amended section 2—1001, and added a new section 2—1001.5, to distinguish between changes of judge and changes of the place of trial, both of which were formerly referred to as "changes of venue." (735 ILCS 5/2—1001, 2—1001.5 (West 1992).) Amended section 2—1001, which does not apply to the present case, eliminates the necessity for the movant to recite that he fears the judge is prejudiced against him, and allows each party "one substitution of judge without cause as a matter of right." (735 ILCS 5/2—1001(a)(2)(i) (West 1992); *In re Marriage of Roach* (1993), 245 Ill. App. 3d 742, 615 N.E.2d 30.) Amended section 2—1001 preserves the limitation that the motion for change of venue must be made "before the judge to whom it is presented has ruled on any substantial issue in the case." 735 ILCS 5/2—1001(a)(2)(ii).

diced against a party or his lawyer is sufficient to require that the cause be transferred to a new judge. [Citation.] Providing the foundation for these rules is the salutary principle that a party should not be compelled to plead his cause before a judge who is prejudiced, whether actually or only by suspicion. [Citation.]''

Boyd argues his position was similar to that of a third party in a supplementary proceeding, in that neither he nor his attorney was a party or filed an appearance in the underlying malpractice action, and maintains the only proceeding in which he appeared had nothing to do with the underlying malpractice case. Boyd maintains these proceedings were, like supplementary proceedings, a separate action from the underlying action, and Boyd, a new party to the new proceedings, was entitled to a change of venue before Judge Virgilio ruled on any substantive issues in the attorney fee proceedings.

Boyd maintains that there is no question that had Cirignani brought a separate action to recover attorney fees, all parties and all attorneys would have been entitled to a change of venue as of right in the action for attorney fees. Boyd concludes by arguing that since Cirignani did not have and did not allege to have an attorney lien for the fees he claimed, the proceedings regarding attorney fees were not properly a continuation of the underlying malpractice action, and the new party, Boyd, should have been granted a change of venue upon his request.

Cirignani argues that Boyd was not a "party" who could petition for change of venue, and the petition itself was untimely. Cirignani points out that at the time Boyd filed his petition for change of venue, he was neither a party to the case, a third party in this action, nor was he the attorney of record for any party. Cirignani maintains that at most Boyd was a lienor and that as of December 17, 1992, he did not even enjoy this status since Boyd did not file a petition for attorney fees until January 13, 1992.

Cirignani contends that Boyd's main assertion is that he was Nunes' attorney since March 1985, and that if this is true, Boyd had every opportunity to file a cocounsel's appearance for the preceding six years. In addition, Boyd had the option to file a separate contract action against Cirignani, which clearly would constitute a new civil proceeding, but instead, he chose to file an attorney's lien and petition for fees in the underlying tort action, with full knowledge of who the trial judge was.

The trial judge presided over pretrial motions, discovery and a two-week jury trial. Clearly, the trial judge made rulings on substan-

tial issues in this case. However, the question in the present case is whether Boyd's petition for a change of venue was timely filed, when filed immediately upon his entry into the case in relation to a matter different from the underlying litigation.

After the verdict was returned and a post-trial settlement was reached, Boyd filed his appearance and petition for change of venue, the plaintiff filed a motion to adjudicate attorney fees, and Cirignani filed a motion to extinguish Boyd's purported liens as well as a motion for fees. Until December 17, 1991, no hearing had been conducted as to attorney fees, and in fact, no issue as to attorney fees had been presented to the trial judge. We have found no case law with a similar factual scenario, *i.e.*, a request for a change of venue by an individual immediately upon his entry to the case, who was neither a party nor an attorney of record, after a trial, but prior to a hearing or any ruling on a supplemental matter.

Boyd filed his petition for a change of venue immediately upon his entry into the case, and although a trial had been concluded, there had been no hearing and no rulings had been made with regard to attorney fees. We find that under the unique facts of this case, Boyd timely filed a petition for a change of venue. Where a petition for change of venue is timely filed and in proper form, it must be granted and any other order entered after its presentation is a nullity. (*In re Dominique F.* (1991), 145 Ill. 2d 311, 324, 583 N.E.2d 555.) We reverse and remand the matter to the trial court with directions to grant Boyd's petition for a change of venue. We note, however, that our ruling on Boyd's right to a change of venue should in no way be construed as a finding as to the merits of Boyd's claims.

Reversed and remanded with directions.

GORDON, P.J., and McNULTY, J., concur.