*In re* PETITION OF C.M.A., a/k/a C.M.W., *et al.*, TO ADOPT K.D.W., a Minor (C.M.A., a/k/a C.M.W., *et al.*, Petitioners-Appellants; K.D.W., a Minor, Respondent-Appellant).—*In re* PETITION OF M.M. *et al.*, TO ADOPT E.L.S. *et al.*, Minors (M.M. *et al.*, Petitioners-Appellants; E.L.S. *et al.*, Minors, Respondents-Appellants).

First District (6th Division)    Nos. 1—99—0769, 1—99—0770 cons.

Opinion filed July 19, 1999.

Lambda Legal Defense and Education Fund, Inc. (Patricia M. Logue, of counsel), and Mulryan & York (Rosemary S. Mulryan, of counsel), both of Chicago, for appellants.

Edward J. O'Connell, of Chicago, guardian *ad litem*.

JUSTICE ZWICK delivered the opinion of the court:

These consolidated appeals arise out of two separate adoption cases and are brought jointly by both sets of adoptive parents and their respective minor children. In these appeals, the parties challenge the propriety and jurisdictional basis of four interlocutory orders entered by Circuit Court Judge Susan McDunn after she had been removed from each case for cause. For the reasons that follow, we grant the relief requested by the appellants and declare null and void each of the orders entered by Judge McDunn after her removal from the instant cases.

In the first of the two adoption cases, C.M.W. and L.A.W. filed their petition to adopt K.D.W. on April 10, 1998. An interim order of adoption was entered that same date by Judge James F. Henry.

C.M.W. and L.A.W. are a lesbian couple who jointly brought a petition to adopt K.D.W., the biological child of C.M.W. Pursuant to the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 1996)) and the procedures of the circuit court, Edward J. O'Connell was appointed guardian *ad litem* (GAL) on behalf of the minor child. The Cook County department of supportive services (DSS) was ordered to conduct an investigation of the family.

The DSS investigative report was favorable and, in fact, all evidence favored the adoption. No negative matters were raised. After reviewing the file and DSS report and filing an answer, the GAL joined with the petitioners in requesting entry of judgment for adoption.

Although the adoption was uncontested, Judge McDunn denied the petition for adoption on July 27, 1998, and instead entered an order "off-call" requiring that a best interests hearing be held.

The best interests hearing was held September 1, 1998. Three witnesses were called and examined by the GAL and counsel for petitioners. C.M.W. and L.A.W. testified about their family and their care of K.D.W. The DSS investigator, who has done studies of this type for almost 20 years, testified about the home-study investigation and the contents of her report. She testified about evidence she received supporting her decision to highly recommend the adoption and her conclusion that the parties' sexual orientation was not a concern. She also testified that such investigations are generally not done when an adoption petitioner is related to the child, as is the situation in the instant

case, but are currently done in all cases in which the petitioners are lesbian or gay.

According to the DSS caseworker, C.M.W. and L.A.W. went through the required intake process and investigation regarding their relationship and financial matters as well as health, family, work, and educational histories. Letters from three people knowledgeable as to their parenting skills were obtained. The investigator spent several hours at the family home and determined that K.D.W. is "a beautiful baby with two people who adore him and love him and *** seems to be just thriving in their home." The caseworker described their home environment and found petitioners' relationship to be stable. She testified further that nothing in her investigation disclosed any problems stemming from the parents' sexual orientation or posed any question about their suitability to adopt.

Judge McDunn asked no questions of any witness about K.D.W. or his care or welfare. Judge McDunn did, however, question each petitioner regarding her "coming out" process as a lesbian, her early sexual experiences, and whether petitioners were currently in a lesbian sexual relationship. These questions were answered completely and truthfully, over objection. The court called no witnesses of its own.

No evidence presented at the hearing indicated any indiscreet or inappropriate conduct by petitioners or others, nor any circumstance harmful to the minor child. All evidence favored the adoption and none indicated that his best interests would be served by denying the petition to adopt. At the conclusion of the hearing, the parties jointly requested entry of an adoption order. Judge McDunn took the case under advisement.

On October 6, 1998, more than a month after the hearing, the GAL moved for entry of judgment. In support of the motion, he stated that the case presented no unique or unusual factual or legal issues. Judge McDunn entered and generally continued this motion and refused to indicate when a ruling would be issued.

On November 17, 1998, Judge McDunn held a status hearing. Again counsel and the GAL inquired when a ruling might be expected. Judge McDunn informed the parties that she could not set such a date, but that she considered that the two lesbian adoption cases before her had "similar issues" and "similar types of circumstances." She indicated that she would likely not be deciding the first case until after hearing evidence in the second case.

On December 11, 1998, the parties brought a motion, pursuant to section 2—1001(a)(3) of the Code of Civil Procedure (735 ILCS 5/2—1001(a)(3) (West 1996)), to remove Judge McDunn from the case based upon her decision to consider evidence in the second, wholly unrelated

case before ruling in the instant case. This motion was heard and granted on December 11, 1998, by Judge Francis Barth, presiding judge of the county division.[1] On December 15, 1998, Judge Barth entered a final judgment of adoption. No appeal was taken from the adoption judgment.

In the second of the two cases, J.S. and M.M. filed their petition to adopt E.L.S. and J.M.S. on April 8, 1998. An interim order of adoption was entered that same date by Judge Sidney R. Yates.

J.S. and M.M. are a lesbian couple and the adoption petition was brought to secure the parental rights of both women, who have jointly raised J.M.S. and E.L.S. since their respective births. E.L.S. is the biological child of M.M., and J.M.S. is the biological child of J.S. The adoption would enable the children to be legally recognized as brother and sister.

Edward J. O'Connell was again appointed GAL on behalf of the minor children and DSS was ordered to conduct an investigation of the family.

The DSS investigative report, submitted on July 9, 1998, was favorable. It described both mothers and their 10-year relationship, their parenting skills and respective backgrounds, and described the children and their interaction, health, and personalities. References characterized petitioners M.M. and J.S. as "loving, caring, nurturing and affectionate parents." The investigator concluded that the petitioners had a "stable relationship, lovely home and warm and caring interaction," and "highly recommend[ed]" the adoption. All evidence favored the adoption, and no negative matters were raised. On July 21, 1998, after reviewing the file and the DSS report and filing an answer, the GAL joined with the petitioners in requesting entry of judgment for adoption without hearing.

Rather than granting the petition, Judge McDunn entered an order "off-call" on July 27, 1998, requiring that a best interests hearing be held. The order reflected that it was *nunc pro tunc* July 21, 1998.

A best interests hearing was originally scheduled for September 3, 1998, but was continued because the DSS investigator was unavailable on that date. No new hearing date was set.

On September 11, 1998, petitioners J.S. and M.M. presented a petition for substitution of judge as a matter of right pursuant to section 2—1001(a)(2)(ii) of the Code of Civil Procedure (735 ILCS 5/2—1001(a)(2)(ii) (West 1996)). The GAL, on behalf of the minor children, consented to the motion. Although no hearing had been held in the

---

[1] In the circuit court of Cook County, the county division hears all adoption matters. In addition, the case was reassigned to Judge Barth.

case, Judge McDunn denied the motion. She ruled that, while the motion would have been considered timely if brought by consent of adult parties, the GAL's consent on behalf of the minor children was not legally sufficient. Judge McDunn expressed her view that the minor children, less than one and three years old, respectively, were required to consent themselves, but had not.

On November 13, 1998, petitioners J.S. and M.M., with the consent of the GAL, filed a motion for voluntary dismissal without prejudice pursuant to section 2—1009 of the Code of Civil Procedure (735 ILCS 5/2—1009 (West 1996)). Although no hearings had been held on the merits of the case, Judge McDunn denied the motion as untimely, stating that a "written hearing" had been held when she entered the order "off-call," without the parties or counsel present, requiring a best interests hearing.

On February 2, 1999, *sua sponte*, Judge McDunn issued an order adding a new party to the case, the Family Research Council (FRC) of Washington, D.C., and ordering that "[t]hrough and including March 4, 1999, Gary Bauer, President of the FRC, and any attorney who files an appearance on behalf of the FRC are permitted to examine the court file herein *** [and] these persons also have leave to make or receive copies of all papers and documents contained in such files," subject to maintaining identifying information as confidential. This order contained the true names of the adopting petitioners and their children. The order was sent by the court to FRC by Federal Express delivery and to the parties by regular delivery through the United States Postal Service.

This order further explained that FRC was added as a "necessary" party and cited sections 2—405, 2—406, 2—407, and 2—408 of the Code of Civil Procedure (735 ILCS 5/2—405, 2—406, 2—407, 2—408 (West 1996)). FRC was added in the capacity of "secondary guardian" to represent the interests of the minor children before the court and of children generally. Judge McDunn indicated that FRC was a necessary party because FRC "is on public record for the position that adoptions by unmarried persons and persons living a homosexual lifestyle are not in the best interests of children" and no party to the case had advocated this position.

Judge McDunn stated further that it was necessary to add FRC because FRC has a general interest in the welfare of children and might have an interest in future cases involving similar circumstances. Judge McDunn expressed the view that no Illinois appellate decision had considered whether adoptions by lesbians and gay men were contrary to the best interests of children.

The parties immediately sought an emergency stay of the order entered on February 2, 1999, allowing them the opportunity to pre-

sent a written and verified motion for substitution of judge for cause pursuant to section 2—1001(a)(3) of the Code of Civil Procedure (735 ILCS 5/2—1001(a)(3) (West 1996)). That motion was presented to Judge Francis Barth, who stated that he was prepared to entertain the substitution motion immediately, allowing the transcript of the hearing to serve as the petition and be verified by affidavit.

After hearing arguments for substitution, Judge Barth granted the motion and removed Judge McDunn for cause. Judge McDunn's order of February 2, 1999, was vacated, and the case was reassigned to Judge Barth.

On February 4, 1999, Judge Barth entered a final judgment of adoption. No appeal was taken from the adoption judgment.

On February 16, 1999, the appellants received orders entered in each case by Judge McDunn and dated Saturday, February 13, 1999. Those orders declared that the petitions for substitution for cause had been improperly brought, that Judge Barth did not have jurisdiction to hear or to grant them, and that the substitution orders were void. In addition, the February 13 orders declared that any adoption judgments entered by Judge Barth were also void because he lacked jurisdiction to act in the cases. Judge McDunn's orders further indicated that the evidence before her was insufficient to grant or deny the adoptions and that it was necessary to hold further hearings for additional proof.

These orders again named FRC as a "necessary" party and "secondary guardian" in both of the adoption cases, and Gary Bauer was allowed immediate access to the confidential adoption files. These orders were sent to FRC by Federal Express delivery and to the parties by regular delivery through the United States Postal Service.

On February 17, 1999, the parties again appeared before Judge Barth and presented an emergency motion to clarify the status and jurisdiction in each of the adoption cases. After hearing, Judge Barth entered orders reaffirming his prior orders removing Judge McDunn for cause and restricting access to the existing confidential adoption files. On February 19, 1999, Judge Barth granted the appellants' joint motion in each case for a stay, pursuant to Supreme Court Rule 305 (155 Ill. 2d R. 305), pending completion of all appeals.

On March 4, 1999, Judge McDunn issued an order in each case stating that Judge Barth's stay orders were of no legal effect because he lacked jurisdiction and that her orders of February 13, 1999, remained in full force and effect. Impending dates by which Judge McDunn had previously allowed FRC to file an appearance were extended and status hearings were scheduled. These orders were sent to FRC by Federal Express delivery and to the parties by regular delivery through the United States Postal Service.

On March 11, 1999, this court granted appellants' petition for leave to appeal pursuant to Supreme Court Rule 306(a)(5) (155 Ill. 2d R. 306 (a)(5)) and set an expedited briefing schedule because the cases involved the care and custody of unemancipated minors.

We initially address appellants' argument that Judge McDunn had no jurisdiction to enter the orders of February 13 and March 4 after she had been removed for cause.

■ Illinois law firmly establishes that once a motion for substitution of judge for cause is brought, that judge loses all power and authority over the case and any orders entered after a judge's removal or after an improper denial of such motion are of no force or effect. See *Jiffy Lube International, Inc. v. Agarwal*, 277 Ill. App. 3d 722, 727, 661 N.E.2d 463 (1996); *People v. Bell*, 276 Ill. App. 3d 939, 946-47, 658 N.E.2d 1372 (1995); *In re Marriage of Cummins*, 106 Ill. App. 3d 44, 47, 435 N.E.2d 506 (1982). Thus, a judge who has been removed from a case for cause has no jurisdiction to enter enforceable orders in that case. Any attempt by the removed judge to rule in such a matter is futile, rendering void all orders entered by that judge after substitution for cause.

In the case at bar, Judge Barth held a hearing on the appellants' motion for substitution of judge for cause and properly granted that motion in light of Judge McDunn's extreme and patent bias against the adoptive parents based upon their sexual orientation. This bias was manifest in numerous ways, including her insensitive probing and wrongful interrogation of the adoptive parents' early sexual history. We can conceive of no legitimate motive or worthwhile purpose for questioning the petitioners on such clearly irrelevant matters. In addition, Judge McDunn joined together two totally separate adoptions, whose only common thread was the sexual orientation of the adoptive parents. As a result, she not only injected inadmissible facts into each of the cases, but also inflicted anguish on the petitioners and needlessly prolonged what should have been a simple and straightforward process. In *In re Petition of K.M.*, 274 Ill. App. 3d 189, 194 (1995), this court pointed out that nothing in the Adoption Act suggests that sexual orientation is a relevant consideration in adoption cases. Therefore, "[s]exual orientation is simply not an issue in these cases, which turn exclusively upon this court's construction of the language of the Act."

In *In re Marriage of R.S.*, 286 Ill. App. 3d 1046, 1055 (1996), a case involving a modification of a custody determination, the court noted that Illinois' approach to child custody determinations is sexual-orientation neutral.

In *In re Marriage of Pleasant*, 256 Ill. App. 3d 742 (1993), this

court strongly criticized a trial judge for focusing on a parent's sexual orientation in a hearing to modify the visitation provisions in a judgment of dissolution of marriage. We found that the judge's personal beliefs improperly clouded his judgment. Similarly, here, the record is clear that Judge McDunn's actions were the result of her personal beliefs regarding homosexuality. It is undisputed from this record that no one opposed these adoptions, except the judge, who obviously had a predetermined bias against lesbians. No judge has the right or authority to ignore the rules governing our administration of justice or to place her interests above those of the litigants.

Petitioners in both of these cases came to our state court system in order to be allowed to adopt children, children with whom they had already formed a loving relationship over a period of time. A higher purpose cannot be imagined. To have the petitioners treated in the manner that they were is nothing less than appalling.

The record indicates that Judge McDunn sought to justify her actions by asserting that the motion for substitution necessarily should have been presented to her in the first instance. Judge McDunn asserted that if the motion had been presented before her, she "would only have a duty to transfer the motion to another judge for a cause hearing if the movants established a threshold basis for the substitution motion ***. The allegations of the instant substitution motion do not establish a threshold basis."

The December 9, 1998, petition for substitution of judge consisted of a verified motion for substitution for cause, petitioners' counsel's affidavit, a copy of the D.S.S. report, the court's order requiring a best interest hearing, a transcript of the best interest hearing, a transcript of the proceeding in which the G.A.L. moved for entry of judgment of adoption, a transcript of the November 17, 1998, status hearing in the K.D.W. adoption case during which Judge McDunn said she would probably conduct a best interest hearing on the E.L.S. and J.M.S. adoption case before deciding the K.D.W. adoption case, a transcript of the proceeding in the E.L.S. and J.M.S. case during which Judge McDunn denied the parties' joint petition for substitution of judge based on the age of the children, and a transcript of the proceeding in which Judge McDunn refused the parties in the E.L.S. and J.M.S. adoption case's joint petition for voluntary dismissal. The trial court's position that this motion and attachments did not establish a threshold basis which required a judge other then Judge McDunn to hear the motion is patently without merit.

The statutory language governing motions for substitution of judge for cause requires that upon the filing of such a motion, the trial court must transfer the motion to a judge other than the judge named in the

petition for a hearing to determine whether the cause exists. See 735 ILCS 5/2—1001(a)(3)(iii) (West 1996); *Jiffy Lube International*, 277 Ill. App. 3d at 727.

■ It would be the better practice to file the petition in the trial court first; however, the exigencies of this case precluded that. In the instant case, Judge Barth addressed this concern and only allowed the petition to file the motion in his court after concluding that based on the fact that all parties to the case joined in the petition, it was an uncontested adoption, and any further delay was unwarranted. Our review of the record in this case reveals facts that we believe are unique and we find that any further delay in this case would have been unconscionable. For all of these reasons, we affirm Judge Barth's December 11, 1998, ruling granting the parties' motion for substitution of judge for cause in the K.D.W. adoption case.

■ On September 11, 1998, the parties in the E.L.S. and J.M.S. adoption case filed a joint petition for substitution of judge as of right pursuant to section 2—1001(a)(2). Judge McDunn found that the petition had been timely filed but denied it, finding that the one-year-old and three-year-old children who are the subjects of the petition seeking adoption did not consent to the motion for substitution. It has long been the law in Illinois that if a petition for substitution for judge is timely made and is in the proper form, the trial court has no discretion to deny it, and any other order entered after its presentation is a nullity. *Nunes v. Northwest Hospital*, 253 Ill. App. 3d 337, 625 N.E.2d 376 (1993), *appeal denied*, 154 Ill. 2d 561, 631 N.E.2d 710 (1994), citing *In re Dominique F.*, 145 Ill. 2d 311, 324, 583 N.E.2d 555 (1991). Guardians *ad litem* may file motions for substitution of judge on behalf of the juveniles they represent. *In re Dominique F.*, 145 Ill. 2d at 323. Therefore, all orders entered by Judge McDunn after September 11, 1998, in the E.L.S. and J.M.S adoption case are void and of no legal effect.

■ We next consider appellants' claim that Judge McDunn erred in appointing FRC as a "secondary guardian." As appellants have argued, there is no provision in Illinois statutory or case law authorizing the addition of FRC as a party to the adoption proceedings below.

Parties to adoption cases are strictly limited to those with legal rights at stake. *Cooper v. Hinrichs*, 10 Ill. 2d 269, 277, 140 N.E.2d 293 (1957). Where an entity has neither custody nor any other legal right with reference to the children sought to be adopted, that entity is entitled to no greater rights than those enjoyed by members of the general public. *Cooper*, 10 Ill. 2d at 277. Intervention will be allowed only where the party has an enforceable or recognizable right, not simply a general interest, in the subject matter of the proceeding. *In re Adoption of Ruiz*, 164 Ill. App. 3d 1036, 1040, 518 N.E.2d 436 (1987).

Here, FRC has no rights at stake in the two adoption cases below. It had no relationship or cognizable interest in the minor children sought to be adopted and had no legally enforceable right or claim which could properly be asserted or defended in those cases. Moreover, FRC, an organization based in Washington, D.C., was not subject to the jurisdiction of the circuit court of Cook County and was not qualified under the statute to act as a guardian *ad litem*.[2] We find Judge McDunn's actions in appointing FRC as a "secondary guardian" to be legally and logically indefensible. In addition, we note that there is no indication in the record that the GAL previously appointed to represent the interests of the minor children had failed in his duty. On the contrary, the GAL appointed in the instant cases has a well-known reputation as a skilled practitioner and, based upon the evidence in the record, diligently performed his legal and ethical obligations as representative for the minor children. The appointment of FRC as a "secondary guardian," without removal of the GAL, or grounds therefore, was unwarranted. Finally, we observe that in making this appointment and permitting FRC access to the court's files, Judge McDunn improperly disseminated sensitive and confidential information to nonparties, in violation of section 18 of the Adoption Act. 750 ILCS 50/18 *et seq.* (West 1996).

For the foregoing reasons, the orders entered by Judge McDunn on February 13, 1999, and on March 4, 1999, are hereby vacated and held null and void.

Vacated.

CAMPBELL, P.J., and QUINN, J., concur.

---

[2]Section 13(B)(a) of the Adoption Act requires that, in all cases, the court shall appoint some licensed attorney other than the State's Attorney acting in his or her official capacity as guardian *ad litem* to represent a child sought to be adopted. 750 ILCS 50/13(B)(a) (West 1996).