**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 200539-U

Order filed July 27, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| *In re* ESTATE OF LARRY L. ROPP, | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| Deceased | ) | Henry County, Illinois. |
| | ) | |
| (Raymond L. Ropp, | ) | |
| | ) | Appeal No. 3-20-0539 |
| Petitioner-Appellant, | ) | Circuit No. 20-P-8 |
| | ) | |
| v. | ) | |
| | ) | |
| Donald L. Ropp, Jr. and Sena M. Ropp, | ) | The Honorable |
| | ) | Mark A. VandeWiele, |
| Respondents-Appellees). | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Presiding Justice Holdridge and Justice Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  (1) This court lacks jurisdiction to consider whether the circuit judge erred in denying petitioner's motion for substitution of judge for cause, (2) the circuit court had subject-matter jurisdiction to appoint an administrator for the estate of decedent, Larry Ropp, and (3) on the merits, the circuit court did not err in appointing respondent, Sena M. Ropp, as administrator of that estate.

¶ 2    This interlocutory appeal is one of at least seventeen appeals filed by Raymond Ropp related directly or indirectly to the administration of the estate of Donald Ropp Sr. (Don Sr.). All judges in Henry County, where the cases originated, either recused or were disqualified and all matters were thereafter handled by Judge Mark VandeWiele of Rock Island County. Specifically, this appeal concerns the appointment of Sena M. Ropp as administrator of the estate of Larry L. Ropp. Prior to his death, Larry had been the successor trustee of Don Sr.'s trust. Petitioner, Raymond Ropp, who had joined Larry as a co-trustee of the trust, challenges Sena's appointment. For the reasons that follow, we affirm the circuit court's order.

¶ 3                                    I. BACKGROUND

¶ 4    Don Sr. created an *inter vivos* trust and executed a pour-over will with the trust as sole beneficiary. Don Sr. and Larry served as co-trustees until Don Sr.'s death in July 2016, after which Larry became sole trustee. Don Sr. was survived by his wife, Reba, and four children-- Donald (Don Jr.), Sena, Larry, and Raymond. All five survivors were beneficiaries of the trust. Reba died one month after Don Sr., leaving her interest in the trust to her estate, which has been an active participant in the ongoing litigation over Don Sr.'s estate.

¶ 5    Relevant to this appeal, Larry, who was unmarried and without children, either attempted suicide or suffered a massive stroke and died on January 28, 2020, throwing the administration of his estate and the trust into question and creating yet another source of contention for the family's continuing litigation. The following day, January 29, Raymond filed a petition for the administration of Larry's estate, alleging that Larry had died "leaving no will" and requesting the appointment of an independent administrator. On January 31, Sena filed a petition to probate an attached will allegedly executed by Larry on January 2, 2008. She represented that it named their father as executor and Sena as successor executor and that it left all of Larry's assets "in equal

2

portions to [his] sisters and brothers alive at the time of [his] death." On February 11, Raymond moved to dismiss Sena's petition, alleging that the 2008 will was invalid.

¶ 6 On March 10, Raymond filed an amended petition, asking the court to find that Larry had died without a valid will and to appoint him as administrator. Thereafter, on April 15, Sena filed a new petition seeking to be named Larry's administrator, "solely as an alternative" to her initial petition. The April petition asked that if the court declined to admit the 2008 will to probate, it would appoint her as administrator. If it would not do either of those things, she asked that it appoint retired judge Timothy Slavin as administrator of Larry's estate.

¶ 7 The parties were informed on November 14 that Judge VandeWiele, who was presiding over the matter following multiple discharges and recusals, would be retiring and December 23 would be his last day on the bench. On December 9, Sena, joined by Don Jr., moved to withdraw (1) her initial petition alleging the existence of a will and seeking appointment as executor of that will and (2) her motion to dismiss Raymond's petition to be named administrator. She asked the court to address only her second, "alternative" petition for letters of administration. This would leave only two competing petitions for the court's consideration—whether she or Raymond should be appointed administrator. Two days later, on December 11, Raymond filed a motion for substitution of judge for cause, arguing that Judge VandeWiele had "demonstrated [a] deep seated antagonism" toward him. In support of his motion, Raymond alleged the judge had ignored applicable doctrines of law, including *res judicata,* and had refused to address other matters before it relevant to the various familial disputes occurring after the deaths of Don Sr. and Larry.

¶ 8 Chief Judge Fuhr held a hearing on December 16 on the motion for substitution of Judge VandeWiele, and subsequently issued a written order denying the motion. Judge Fuhr noted that

in seeking a substitution for cause, the movant must "show some bias or prejudice on the part of that judge" beyond the substance of disputed rulings. He also stated that Judge VandeWiele was doing his utmost to resolve this "complicated" matter before his retirement and commended him for that effort. Finally, Judge Fuhr concluded that Raymond simply disagreed with prior rulings and that the court, having seen no evidence of bias or prejudice, was not "going to second-guess [those]rulings."

¶ 9   On December 22, Judge VandeWiele held a hearing on the competing petitions of Sena and Raymond to be appointed administrator of Larry's estate. Although Raymond did not attend, he did submit two oral motions, one to reconsider permitting Sena to withdraw her petition to probate the will and another to bar witnesses. In addition, Raymond's claim that Larry had disinherited Sena and Don Jr. immediately prior to his death was raised at the hearing.

¶ 10   The court issued its written order on December 23. In it the court, first, described the long history of "bad blood" among the four siblings, leading to Larry "unilaterally declar[ing] Don Jr., Sena, and Reba to be disinherited," and excluding Don Jr. and Sena from any decision making regarding their father's trust. Larry's declaration gave full control to himself and Raymond over "the roughly $1,400,000 in assets Don Sr. left at his death." The order recited that during the time of their joint control, Larry and Raymond made several payments, disbursements, and transfers from the trust's assets to themselves and that a significant portion of the trust *res* remained unaccounted for. While Larry was on his deathbed, Raymond entered his home and removed 20 boxes of personal and trust records, including records of the personal transfers. The court also documented extensive, contentious litigation among the siblings and it took judicial notice of prior proceedings and incorporated portions of them in its order.

¶ 11    The court's order also rejected Raymond's claim of disinheritance of Sena and Don Jr. by Larry, finding that the parties, including Raymond, had all agreed that Larry was brain dead between the event (stroke or suicide attempt) that led to his death and the time they decided to remove him from life support, and therefore was unable to make such a decision. Finally, the court appointed Sena as administrator of Larry's estate, granting her authority to inventory and remove his personal property and records. We will examine its reasons in detail in our analysis of Raymond's challenge to those decisions in this appeal.

¶ 12    Raymond subsequently filed his notice of appeal, asserting that he was appealing the order appointing Sena as administrator, and describing that order as:

> "The December 23, 2020, Order of the Circuit Court asserting its
> jurisdiction where it has none and appointing Sena M. Ropp as
> administrator of the Estate."

He then asked "the Appellate Court to reverse the December 23, 2020[,] Order in its entirey [*sic*] and remand the case *** for further proceedings consistent with this Court's ruling on appeal." In a footnote to the word "none," Raymond asserted that "any orders entered by Judge VandeWiele after such denial [of the motion for substitution] are void for lack of jurisdiction."

¶ 13                                    II. ANALYSIS

¶ 14                                    A. Jurisdiction

¶ 15    In this appeal, Raymond first argues that the circuit court lacked jurisdiction to enter the order appointing an estate administrator. In support of that claim, he solely contends that Chief Judge Fuhr erred in denying his motion for substitution of judge and, because of that alleged error, Judge VandeWiele lacked jurisdiction to render a decision and his order is void for lack of

that jurisdiction. Sena responds that Judge Fuhr's ruling is not properly before this court because Raymond did not include it in his notice of appeal. These contentions raise issues of jurisdiction in both the circuit court and this court.

¶ 16    We look first at our appellate jurisdiction. "A notice of appeal confers jurisdiction on a court of review to consider only the judgments or parts of judgments specified in the notice of appeal." *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 176 (2011) (citing *People v. Lewis*, 234 Ill. 2d 32, 37 (2009)). Illinois Supreme Court Rule 303(b)(2) directs that a notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." Ill. S. Ct. R. 303(b)(2) (eff. May 30, 2008). "We lack jurisdiction to consider issues not specified in the notice of appeal." *In re Estate of York*, 2015 IL App (1st) 132830, ¶ 34 (citing *Atkinson v. Atkinson*, 87 Ill. 2d 174, 177-78 (1981)).

¶ 17    Raymond's notice of appeal, on its face, challenges the order appointing an administrator, asking this court "to reverse the *** Order in its entirey [*sic*] and remand the case *** for further proceedings consistent with this Court's ruling on appeal." Although, in a footnote, he contended that "any orders entered by Judge VandeWiele after [the] denial" of the motion for substitution "are void for lack of jurisdiction," he did not directly appeal Judge Fuhr's order.

¶ 18    Also absent from the notice of appeal itself or any reasonable construction of its content is any request to review several other issues now raised by Raymond. Specifically, the arguments concerning the circuit court's subject-matter jurisdiction, Raymond's suspension as trustee, and the demand for an accounting are not included. The failure to file a proper notice of appeal is not remedied by arguing the unnoticed issues in the briefing. *Id.* ¶ 39. Therefore, as the correctness of Judge Fuhr's ruling on the motion to substitute Judge VandeWiele has not been challenged in the notice of appeal, this court lacks jurisdiction to consider it.

6

¶ 19    However, "[a]n alleged lack of [the circuit court's] subject-matter jurisdiction may be raised at any time, even on appeal by a party who has failed to include it in a notice of appeal." *Lorenz v. Siano*, 248 Ill. App. 3d 946, 949 (1993). Accordingly, we address whether the circuit court lacked subject-matter jurisdiction without reviewing the motion for substitution of judge.

¶ 20    "[S]ubject-matter jurisdiction refers to a tribunal's power to hear and determine cases of the general class to which the proceeding in question belongs." *Zahn v. North American Power & Gas, LLC*, 2016 IL 120526, ¶ 13 (citing *J & J Ventures Gaming, LLC v. Wild, Inc.*, 2016 IL 119870, ¶ 23). Except in administrative review, this state's constitution vests circuit courts with original jurisdiction over all "justiciable matters" unless the state supreme court possesses " 'original and exclusive jurisdiction relating to redistricting of the General Assembly and to the ability of the Governor to serve or resume office.' " *Id.* (quoting Ill. Const. 1970, art. VI, § 9). So long as the matter brought before a circuit court is justiciable and does not fall within the original and exclusive jurisdiction of the Illinois Supreme Court, a circuit court has subject-matter jurisdiction to consider it. *Id.* (citing *McCormick v. Robertson*, 2015 IL 118230, ¶ 20).

¶ 21    On appeal, Raymond relies solely on the claimed error of Judge Fuhr's ruling on the motion for substitution of judge to challenge the circuit court's jurisdiction to rule on the appointment of an administrator. As that issue is justiciable and does not fall within the supreme court's original and exclusive jurisdiction, the circuit court had subject-matter jurisdiction to address and resolve the matters before it. Moreover, as previously discussed, that issue has not been submitted to us by the notice of appeal. Raymond has also presented no cognizable claim that the circuit court had lost jurisdiction if that were even possible. The case that he has cited in support of that proposition, *In re C.M.A,* 306 Ill. App. 3d 1061, 1067 (1999), is not remotely apposite here. In it, a decision was made finding that the trial court judge was indeed biased

7

against the parties and barring her, *but not the court,* from further participation in the cases. That scenario is the complete opposite of the instant case. Moreover, even if Judge VandeWiele had been disqualified, the court would not have lost jurisdiction. We hold that the circuit court had, and never lost, subject-matter jurisdiction to appoint Sena as the administrator of Larry's estate.

¶ 22                                   B. Appointment of Sena as Administrator

¶ 23        Turning to the merits of this interlocutory claim, the court resolved three pending motions: Raymond's amended motion for letters of administration, Sena's petition for letters of administration, and Raymond's oral motion to reconsider the order allowing Sena to withdraw her petition to probate Larry's will. In the oral motion, Raymond argues that the circuit court "improvidently" appointed Sena as administrator, maintaining that the court was required to hold a substantive hearing when he contested the 2008 will. He contends, for the first time, that section 9-2 of the Probate Act of 1975 (Act) (755 ILCS 5/9-2 (West 2020)) requires the court to first determine whether Larry had died intestate before appointing an administrator.

¶ 24        We begin our analysis of this issue by reiterating the posture of the case when the circuit court held the hearing and issued its decision. Every pleading filed by Raymond had asserted that Larry had died intestate and an administrator should be appointed. Sena had filed an initial pleading in which she sought to probate a 2008 will purported to have been executed by Larry and to be named executor pursuant to that document. Her remaining pleading sought only to be named administrator herself or, in the alternative, to have former judge Timothy Slavin so named. She had moved to dismiss the initial pleading—a motion that was granted—and asked that the court rule only on the basis of the remaining motions. Although Sena offered the 2008 will, she never established the will nor offered competent evidence of its validity. She then withdrew her petition to admit the 2008 will, electing to ask the court to name her or,

8

alternatively, Timothy Slavin as administrator. As noted by Judge VandeWiele, the will tendered by Sena had only one signature; it was therefore invalid on its face. Once he had allowed the pleading to be withdrawn, there was no further request from Sena regarding the will. Judge VandeWiele was not presented with the issue of Larry's purported will at or before the hearing on December 22 and he had no reason to address or resolve its validity.

¶ 25        Finally, we consider Raymond's contention that he, and not Sena, should have been named administrator. Regarding eligibility to serve as an administrator in this case, section 9-2 provides: "[w]hen a person dies intestate, letters of administration shall be issued in accordance with the preferences in Section 9-3 upon petition therefor, unless the issuance of letters is excused." 755 ILCS 5/9-2 (West 2020). Looking at section 9-3, which lists in descending order the "[p]ersons entitled to preference in obtaining letters," it imposes no statutory bar to Sena's service as administrator of Larry's estate. *Id.* § 9-3. Raymond and Sena, as Larry's siblings, stand on equal footing and each has an equal statutory right to appointment as administrator of Larry's estate.

¶ 26        Raymond next argues that Sena lacked standing to request the appointment of an administrator. He contends that Sena was disinherited pursuant to section 2-6 of the Act because she (and Don Jr.) had hastened Larry's death. However, he maintains that the merits of Sena's disinheritance are not at issue on appeal. Instead, he contends that the only issue before us "is whether the Circuit Court erred in appointing Sena as administrator of the Larry Estate without first determining if she has standing to act as administrator in light of the disinheritance claim."

¶ 27        "Only a person qualified to act as administrator under this Act may nominate" an administrator. *Id.* § 9-3. The statute grants the court discretion to appoint an administrator from the "several persons [who] are claiming and are equally entitled to administer or to nominate an

9

administrator." *Id.* It does not impose an affirmative duty on the court to determine whether a nominated person has standing to act as administrator. The burden, thus, shifts to the parties to establish that a person is not qualified to act as or to nominate an administrator. However, Raymond concedes that this issue is not before us on appeal. We agree and reject his procedural challenge. Thus, it remained only for Judge VandeWiele to make a final determination of which sibling, as between Sena and Raymond, should be named administrator of Larry's estate.

¶ 28    In making this decision, Judge VandeWiele began by reviewing Raymond's actual performance as an administrator of the Don Ropp, Sr. trust. He described particular actions and statements of Larry and Raymond—sometimes identified as "Larry/Raymond"—that he expressly found disqualified Raymond from serving as administrator of Larry's estate. Regarding the Don Ropp, Sr. trust, of which Larry and Raymond eventually acted in tandem as trustees, the court's order stated that they "control the trust checkbook and freely spend trust assets to perpetuate their stranglehold on trust information and assets." Larry disinherited his other siblings, attempting to leave only himself and Raymond to share their father's entire estate. Because of this action, Raymond now claims sole entitlement to *all* of Don Ropp, Sr.'s trust and estate assets, including those held by Larry before his death. To secure this latter asset to himself, seven hours after *all* the siblings had agreed Larry was legally dead, Raymond filed an action to be named his guardian to execute documents ensuring he would get Larry's entire estate. On another matter, when the court directed him to get an accounting of the trust assets, which showed "roughly $250,000 in cash unaccounted for," and therefore appeared depleted, Raymond "openly defied" the court's order. The court further noted that "[n]oticeably missing from the records are what payments, disbursements and transfers Larry and Raymond made to themselves and their attorneys." Concerning his performance as trustee, the court order concluded that

10

"[l]ike his older brother, Raymond ignores legal duties required of the office that he considers inconvenient. He too failed to administer the trust effectively."

¶ 29    Turning to Larry's estate, in addition to attempting to create testamentary documents in his dead brother's estate, as set out above, the court order recounted that: "Raymond's testimony established he lacks the skills, training, and independence to effectively administer and manage the trust. Raymond is unsuited to serve as administrator of Larry's estate. Larry's estate needs a strong leader. Raymond lacks the ability to effectively lead because his own pecuniary interest interferes with his fiduciary judgment." The court concluded: "Raymond is entitled to advocate for his position and ultimately Raymond may receive all or a majority of Larry's assets. But a fair and impartial examination of the issue cannot occur if Raymond acts as a fiduciary in Larry's estate."

¶ 30    For the foregoing reasons, the trial court elected not to name Raymond the administrator of Larry's estate but to appoint Sena instead. We find no abuse of the court's discretion in its decision to do so, and we affirm that part of the order as well.

¶ 31                              III. CONCLUSION

¶ 32    For the foregoing reasons, we affirm all aspects of the judgment of the circuit court of Henry County.

¶ 33    Affirmed.