# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Schnepf v. Schnepf*, 2013 IL App (4th) 121142

---

| | |
|---|---|
| Appellate Court Caption | JOHN SCHNEPF and RAYMOND SCHNEPF, Plaintiffs-Appellees, v. LYNDLE SCHNEPF, Defendant-Appellant, and BRENDA SCHNEPF JOHNSON, Defendant.–JOHN SCHNEPF and RAYMOND SCHNEPF, Individually and as Executors of the Estate of Maleta Maxine Schnepf, Plaintiffs-Appellants, v. LYNDLE SCHNEPF and BRENDA SCHNEPF JOHNSON, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket Nos. 4-12-1142, 4-12-1167 cons. |
| Filed | September 11, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute concerning the partition of a farm, the trial court erred in denying plaintiff's motion for substitution of judge as a matter of right based on the court's conclusion that even though no substantial rulings had been made, plaintiff had an "opportunity to test the waters," because the "test the waters" doctrine should not be applied to extinguish a party's "absolute" right to a substitution of judge without cause pursuant to section 2-1001(a)(2) of the Code of Civil Procedure, and since the orders entered following the improper denial of plaintiff's motion were void, the orders were vacated and the cause was remanded with directions to grant the motion. |
| Decision Under Review | Appeal from the Circuit Court of Pike County, No. 07-CH-2; the Hon. Diane M. Lagoski, Judge, presiding. |
| Judgment | Vacated in part and remanded with directions. |

Counsel on Appeal

Howard L. Snowden (argued), of Snowden & Snowden, of Quincy, for Lyndle Schnepf.

William H. Strang (argued), of Strang & Parish, Ltd., of Jerseyville, for John Schnepf.

John D. Coonrod (argued), of Winchester, for Raymond Schnepf.

John B. Leonard and Rick Zimmerman (argued), both of Mt. Sterling, for Brenda Schnepf Johnson.

Panel

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court, with opinion.

Justices Knecht and Harris concurred in the judgment and opinion.

## OPINION

¶ 1    These consolidated appeals arise from an action in partition involving a family farm owned in common by four siblings. In January 2007, plaintiffs Raymond Schnepf, John Schnepf, and their late mother, Maleta Maxine Schnepf (who died during the course of these proceedings), filed a complaint for partition of real estate, naming Lyndle Schnepf and Brenda Schnepf Johnson as defendants. In February 2008, before the trial court ruled on any substantial issue in the case, John filed a motion for substitution of judge as of right (735 ILCS 5/2-1001(a)(2) (West 2008)). In March 2008, the court denied John's motion on the basis the court had "previously indicated its position on issues going to the merits of [the] complaint." In May 2009, the court entered a ruling on the parties' interests in the property, finding that Raymond, John, and Brenda each owned a four-fifteenths interest in the property and that Lyndle owned a one-fifth (or three-fifteenths) interest. In November 2012, the court ordered the property sold pursuant to section 17-105 of the Code of Civil Procedure (Code) (735 ILCS 5/17-105 (West 2010)).

¶ 2    Lyndle appeals (this court's case No. 4-12-1142), arguing that the trial court erred by finding that he owns a one-fifth share of the property and John, Raymond, and Brenda each own a four-fifteenths share. John appeals separately (this court's case No. 4-12-1167), asserting that the court erred by denying his February 2008 motion for substitution of judge. John contends that the court's orders following its improper denial of his motion for substitution of judge are void. In May 2013, we granted John's motion to consolidate the appeals. Because we conclude that the court's orders entered following its improper denial

of John's motion for substitution of judge are void, we remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4       The trial court proceedings in this case lasted almost six years. The court held at least 36 hearings. More than 200 docket entries span 16 pages of the record. The proceedings have been long and complicated. Moreover, this case was preceded by at least five years of prior litigation involving the same parties and property. Accordingly, in the interest of brevity, we review only the facts necessary to explain our decision.

¶ 5                          A. Events Leading up to This Case

¶ 6       The real estate at issue (the property) is an approximately 320-acre family farm located in Pike County. Through a series of deeds in 1988, 1989, and 1993, Maleta deeded the property to her four children, Raymond, John, Lyndle, and Brenda, to hold as tenants in common. As a result of the 1989 and 1993 deeds, Raymond, John, and Brenda each held a four-fifteenths interest in the property and Lyndle held a one-fifth interest. With each deed executed between 1988 and 1993, Maleta attempted, but failed, to reserve a life estate for herself. Maleta finally secured her life estate as a result of this court's order in *Schnepf v. Schnepf*, No. 4-05-0817 (July 26, 2006) (unpublished order under Supreme Court Rule 23), a case involving the same parties and property. In that case, we found that the trial court erred by denying Maleta, Raymond, and John's request for reformation of the 1988 and 1989 deeds. Our order was limited to the issue of whether the deeds should have been reformed to provide Maleta with a life estate. We did not address whether the deeds should have been reformed to provide Raymond, John, Lyndle, and Brenda with equal, one-quarter interests in the property, as the parties had originally intended in 1988.

¶ 7                       B. The Proceedings in This Case

¶ 8       In January 2007, Maleta, John, and Raymond filed a complaint for partition of the property, naming Lyndle and Brenda as defendants.

¶ 9       In February 2007, Lyndle filed (1) a motion for substitution of judge as of right (735 ILCS 5/2-1001(a)(2) (West 2006)) and (2) a motion to dismiss. The motion to dismiss alleged, in pertinent part, that Maleta was "seriously ill, mentally incompetent, and under the undue influence of Raymond Schnepf and John Schnepf and incapable of consenting to the sale of her life estate." The motion to dismiss did not cite the section of the Code under which it was brought.

¶ 10       Four days after Lyndle filed his motions, the trial court, Judge Michael Roseberry, granted Lyndle's motion for substitution of judge and referred the case to Chief Judge Thomas L. Brownfield for reassignment. Chief Judge Brownfield assigned the case to Judge Richard Greenlief.

¶ 11       Later in February 2007, Raymond filed a motion for substitution of judge as of right. In March 2007, Judge Greenlief granted Raymond's motion and referred the case back to Chief Judge Brownfield, who then reassigned the case to Judge Diane Lagoski.

¶ 12        In May 2007, the trial court scheduled a hearing on all pending motions for July 2007 and granted Brenda an extension of time to file motions.

¶ 13        In June 2007, Brenda filed the following motions: (1) "suggestion of disqualification of plaintiff's attorney of record from proceeding on behalf of any nominal plaintiffs" (suggestion of disqualification); (2) motion to dismiss the complaint for partition pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2006)); (3) motion to dismiss the complaint for partition pursuant to sections 2-619(a)(2) and (a)(9) of the Code (735 ILCS 5/2-619(a)(2), (a)(9) (West 2006)); and (4) alternative motion to strike paragraphs "D" and "E" of the prayer for relief as contained in the complaint for partition.

¶ 14                            C. The July 2007 Hearing

¶ 15        In July 2007, Judge Lagoski presided over a hearing scheduled to address all pending motions, which included Lyndle's motion to dismiss and Brenda's four motions. At the hearing, the parties' attorneys and Judge Lagoski discussed (1) Brenda's suggestion of disqualification, (2) the effect of Maleta's life estate and Raymond and John's farming lease on the partition suit, and (3) the issue of Maleta's mental competence.

¶ 16        During a discussion of the life estate and farm lease, Lyndle's attorney informed Judge Lagoski that he had filed a separate suit on behalf of Lyndle seeking to set aside Raymond and John's farming lease (Pike County case No. 07-CH-18). In that suit, Lyndle alleged that Maleta was mentally incompetent and under undue influence from Raymond and John. Because Judge Lagoski determined that Maleta's mental competence was an issue common to both cases, she decided to adjourn the hearing and abstain from ruling on any of the pending motions until Lyndle's suit to set aside the lease had been resolved.

¶ 17              D. John's Motion for Substitution of Judge as of Right

¶ 18        In February 2008, apparently after Lyndle's separate suit to set aside the farm lease had been resolved, John filed a motion for substitution of judge as of right. Lyndle and Brenda filed separate motions to strike John's motion for substitution of judge. Following a March 2008 hearing on the motions, the court denied John's motion for substitution of judge, explaining its ruling, as follows:

    "The question is, number one, has the court ruled on any substantial issue? Has the party who made that motion had, in fact, the chance to test the waters[,] using the terminology ***.
    ***
    But, I have to think that after I did a couple of hours worth of argument that the parties had an opportunity to test the waters. I don't know what I said, but I must have said something, because all those months later, all of a sudden, [John] decided he wanted to do a motion for substitution, or maybe something happened. I can't imagine I ruled in his favor in the other matter.
    ***
    So, I don't know what the issue is, but something obviously has come up, and my

-4-

sense is that it's too late. I mean, we started it, and just because I didn't sign an order or make any actual rulings on the merits of it, I think I certainly indicated some issues that I had problems with."

¶ 19                                   E. The Trial Court's Subsequent Orders

¶ 20    In May 2009, following a hearing to determine the parties' proportionate interests in the property, the trial court entered a written order finding that Raymond, John, and Brenda each owned a four-fifteenths interest in the property, and Lyndle owned a one-fifth interest. The court based its ruling on this court's 2006 decision in *Schnepf v. Schnepf*, No. 4-05-0817 (July 26, 2006) (unpublished order under Supreme Court Rule 23).

¶ 21    In November 2012, the trial court found that the real estate could not be equitably divided between the parties and ordered it sold pursuant to section 17-105 of the Code (735 ILCS 5/17-105 (West 2010)). This order rendered the previous orders in the case final for purposes of appeal.

¶ 22    These consolidated appeals followed.

¶ 23                                              II. ANALYSIS

¶ 24    John asserts that the trial court erred by denying his February 2008 motion for substitution of judge as of right (735 ILCS 5/2-1001(a)(2) (West 2008)). John correctly notes that any orders entered by a court following an improper denial of a motion for substitution of judge are void. *Aussieker v. City of Bloomington*, 355 Ill. App. 3d 498, 500, 822 N.E.2d 927, 929 (2005). Because our resolution of John's claim of error is dispositive of Lyndle's appeal, we begin by addressing the court's denial of John's motion for substitution of judge.

¶ 25                            A. Motion for Substitution of Judge as of Right

¶ 26    Civil litigants in Illinois are entitled to one substitution of judge without cause as a matter of right. 735 ILCS 5/2-1001(a)(2)(i) (West 2008). The trial court must grant a party's motion for substitution of judge as of right if the motion "is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case." 735 ILCS 5/2-1001(a)(2)(ii) (West 2008); *Rodisch v. Commacho-Esparza*, 309 Ill. App. 3d 346, 350, 722 N.E.2d 326, 329 (1999). A substantial issue is one relating directly to the merits of the case. *Id.* at 350-51, 722 N.E.2d at 330.

¶ 27    "The right to substitution of judge is absolute when properly made, and the circuit court has no discretion to deny the motion." *Cincinnati Insurance Co. v. Chapman*, 2012 IL App (1st) 111792, ¶ 23, 975 N.E.2d 203. "Section 2-1001(a)(2) of the Code is 'to be liberally construed, and where the conditions are met, the trial court has no discretion to deny the request unless it is shown that the motion was made simply to delay or avoid trial.' " *Illinois Licensed Beverage Ass'n v. Advanta Leasing Services*, 333 Ill. App. 3d 927, 932, 776 N.E.2d 255, 259-60 (2002) (quoting *Sahoury v. Moses*, 308 Ill. App. 3d 413, 414, 719 N.E.2d 1157, 1158 (1999)). Because the trial court has no discretion to deny a proper motion for substitution of judge as of right, our review is *de novo*. *Id.*, 776 N.E.2d at 260.

¶ 28 In denying John's motion for substitution of judge, the trial court acknowledged that it had not yet made a substantial ruling in the case. Rather, the court based its decision on the fact that John had an "opportunity to test the waters" prior to filing his motion because the court had "previously indicated its position on issues going to the merits of [the] complaint herein." Lyndle and Brenda argue the court properly denied John's motion on this basis. John asserts that this court has rejected the "test the waters" doctrine and, because his motion met the statutory conditions, his right to a substitution of judge should have been granted under section 2-1001(a)(2) of the Code.

¶ 29 The parties' disagreement on this point is understandable. In fact, cases from this court provide support for both parties' positions. Compare *Advanta Leasing Services*, 333 Ill. App. 3d at 933, 776 N.E.2d at 261 ("[A] movant's right to substitution of judge as of right is absolute, and the trial court does not have discretion to consider whether the movant had an opportunity to 'test the waters.' "), with *Curtis v. Lofy*, 394 Ill. App. 3d 170, 176, 914 N.E.2d 248, 253 (2009) ("A motion for substitution may also be denied, in the absence of substantive ruling, if the movant had the opportunity to form an opinion as to the judge's reaction to her claims.").

¶ 30 Admittedly, the weight of appellate court authority supports Lyndle and Brenda's position that a trial court may deny a motion for substitution of judge as of right, in the absence of a substantial ruling, if the movant has had an opportunity to "test the waters" and form an opinion as to the court's disposition toward his or her case. See *Chapman*, 2012 IL App (1st) 111792, ¶ 23, 975 N.E.2d 203; *Curtis*, 394 Ill. App. 3d at 176, 914 N.E.2d at 253 (Fourth District); *In re Estate of Gay*, 353 Ill. App. 3d 341, 343, 818 N.E.2d 860, 863 (2004) (Third District); *City of Granite City v. House of Prayers, Inc.*, 333 Ill. App. 3d 452, 461, 775 N.E.2d 643, 650 (2002) (Fifth District). However, nothing in the text or purpose of section 2-1001(a)(2) provides a footing for this doctrine, and the supreme court has never endorsed it under the current version of the statute. To explain how the "test the waters" doctrine came into existence, and why it is no longer an appropriate judicial supplement to the substitution-of-judge analysis, we briefly review its origins and evolution.

¶ 31         1. *Substitution of Judge Under the Old Change of Venue Statute*

¶ 32 Prior to 1993, section 2-1001 of the Code (then titled "Change of venue" and sometimes referred to as the venue act) required a movant seeking a substitution of judge to recite that he feared the judge was prejudiced against him. Ill. Rev. Stat. 1991, ch. 110, ¶ 2-1001; *Nunes v. Northwest Hospital*, 253 Ill. App. 3d 337, 342, 625 N.E.2d 376, 380 (1993). However, despite the requirement that the petitioner allege prejudice, the judge was not permitted to "inquire as to the truthfulness of the allegations of prejudice." *Rosewood Corp. v. Transamerica Insurance Co.*, 57 Ill. 2d 247, 250-51, 311 N.E.2d 673, 675 (1974); see also *Hoffmann v. Hoffmann*, 40 Ill. 2d 344, 347, 239 N.E.2d 792, 794 (1968).

¶ 33 This approach created concern among Illinois courts that parties might seek a substitution of judge not because of a fear of prejudice, but because they had formed an opinion that the judge was unfavorably disposed to their case. In other words, a party with no sincere fear of prejudice could use argument and courtroom discussion during the early stages of the

proceeding to get a feel for the judge's leanings in the case, then invoke its absolute right to a substitution of judge if it sensed the judge would rule unfavorably toward it on one issue or another. With no mechanism for testing the legitimacy of the party's fear of prejudice, which it was required to allege but not required to prove, courts perceived the statutory system as open to abuse.

¶ 34    In *Commissioners of Drainage District No. 1 v. Goembel*, 383 Ill. 323, 328, 50 N.E.2d 444, 447 (1943), the supreme court described the potential for abuse as follows:

> "It would be highly improper to permit an attorney representing parties to a suit to try out the attitude of the trial judge on a hearing as to part of the questions presented and, if his judgment on such questions was not in harmony with counsel's view, to then permit counsel to assert that the court was prejudiced and that a change of venue must be allowed."

¶ 35    In *Fennema v. Joyce*, 6 Ill. App. 3d 108, 285 N.E.2d 156 (1972), the First District intimated that, even absent a substantial ruling, litigants should not be entitled to a change of venue once the trial judge has revealed, through courtroom discussion, his views on the merits of the case. The court explained that it was "not prepared to hold that a pre-trial conference could never render untimely a Motion for Change of Venue, for we recognize the potential for abuse in a rule which would allow litigants to test the disposition of a trial judge during pre-trial, while retaining an absolute right to a change of venue." *Id.* at 111, 285 N.E.2d at 158.

¶ 36    In *In re Marriage of Kozloff*, 101 Ill. 2d 526, 463 N.E.2d 719 (1984), the supreme court took an indirect measure to curb perceived abuse of the venue act. At the time, the appellate court considered each postdecree petition filed following a judgment of dissolution of marriage as a new proceeding. *Id.* at 529-30, 463 N.E.2d at 721. This rule led to abuse because if a party desired a substitution of judge after a substantial ruling had been made, it could simply voluntarily dismiss the petition and refile an identical petition, which would likely get docketed before a different judge. Even if the new petition was docketed before the same judge, the party retained its absolute right to a change of venue because a substantial ruling had not yet been made in the proceedings on the new petition. The supreme court rejected the appellate court's rule that each postdecree petition constituted a new proceeding, stating, "in our judgment it would lead to a serious abuse of the venue act. This court has long condemned a litigant's attempt to seek a change of venue after he has formed an opinion, based upon the court's adverse rulings, that the judge may be unfavorably disposed towards his cause." *Id.* at 530-31, 463 N.E.2d at 721. However, in addressing the abuse of the venue act, the court merely held that postdecree petitions constitute continuations of the dissolution proceeding, not new proceedings. *Id.* at 531, 463 N.E.2d at 722. The court did not hold, as a general matter, that the mere opportunity to form an opinion as to the judge's disposition toward a case barred the litigant from thereafter seeking a change of venue.

¶ 37    In *In re Marriage of Kenik*, 181 Ill. App. 3d 266, 271, 536 N.E.2d 982, 985 (1989), the First District affirmed the trial court's denial of a petition for a change of venue because the trial judge had already ruled on substantial issues in the case. In *dicta*, however, the court found that the parties' discussion and argument before the judge at an earlier court

appearance precluded the motion for a change of venue. The court explained its position, as follows: "This exchange presented [the party seeking a change of venue] the opportunity to form an opinion as to the court's reaction to his claim, thereby additionally foreclosing [his] automatic right to a change of venue." *Id.*

¶ 38 Finally, in *Hader v. St. Louis Southwestern Ry. Co.*, 207 Ill. App. 3d 1001, 1009, 566 N.E.2d 736, 741 (1991), the trial court held a hearing on the defendant railway company's motion to continue and motion to bar the plaintiff's expert witness, but the court continued the hearing without ruling on those motions. *Id.* at 1007-08, 566 N.E.2d at 740. Based on the extensive discussion at the hearing, the parties would have been led to believe that the trial judge was going to deny the railway company's motion for continuance. *Id.* at 1008, 566 N.E.2d at 740. At the continued hearing, the trial judge took up the railway company's petition for a change of venue. *Id.* The plaintiff's attorney argued that the petition should be denied because the attorney for the railway company "had already gotten the 'flavor or feeling' for the way the judge planned to rule on at least the motion to continue." *Id.* The trial judge agreed and denied the petition. *Id.* In affirming the trial court, the Fifth District cited *Fennema* and explained its decision, as follows:

"Even though the trial court did not rule on the motion to continue or the motion to bar plaintiff's experts prior to the time the motion for change of venue was considered, the [railway company's] attorney was clearly testing the temperament of the trial court not only on the motion to continue, but also on the motion to bar plaintiff's experts. Therefore, under the present facts, we find that the trial court did not err in denying the [railway company's] motion for change of venue." *Id.* at 1009, 566 N.E.2d at 741.

¶ 39 What the aforementioned cases have in common is that the party petitioning for a change of venue was required to allege that he feared the trial judge was prejudiced against him, but the procedural facts of the cases suggested a possible ulterior motive behind the party's desire to be heard in front of a different judge. These decisions reflect the courts' attempts to stay true to the intended purpose of the old version of section 2-1001(a)(2), which was to ensure that a litigant "not be compelled to plead his cause before a judge who is prejudiced, whether actually or only by suspicion." *Becker v. R.E. Cooper Corp.*, 193 Ill. App. 3d 459, 462, 550 N.E.2d 236, 238 (1990).

¶ 40           2. *Public Act 87-949 and Elimination of the Prejudice Requirement*

¶ 41 Effective January 1993, Public Act 87-949 amended section 2-1001 of the Code and added section 2-1001.5 to distinguish between "substitution of judge" (735 ILCS 5/2-1001 (West 1992)) and "change of venue" (735 ILCS 5/2-1001.5 (West 1994)). Pub. Act 87-949, § 1 (eff. Jan. 1, 1993). The Act also amended section 2-1001(a)(2) to provide each party the right to one substitution of judge without cause. That section reads, in pertinent part, as follows:

"(a) A substitution of judge in any civil action may be had in the following situations:
    ***

(2) Substitution as of right. When a party timely exercises his or her right to a substitution without cause as provided in this paragraph (2).

> (i) Each party shall be entitled to one substitution of judge without cause as a matter of right.

> (ii) An application for substitution of judge as of right shall be made by motion and shall be granted if it is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case, or if it is presented by consent of the parties." 735 ILCS 5/2-1001 (West 2008).

¶ 42 For the sake of avoiding confusion, we take this opportunity to briefly note the changes in terminology caused by the 1993 amendments to the Code. First, substitutions of judge as of right under the current section 2-1001(a)(2) are made by "motion." Under the old version of the statute and under section 2-1001(a)(3) of the new version (substitution for cause), substitutions are made by "petition." *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 28, 958 N.E.2d 647. Second, under the old statute, a substitution of judge and a substitution of the county in which the cause was to be heard were both referred to as a "change of venue." The new version of the statute explicitly distinguishes between substitution of judge (735 ILCS 5/2-1001 (West 2008)) and transfer of the cause to another county, a "change of venue" (735 ILCS 5/2-1001.5 (West 2008)).

¶ 43 By amending section 2-1001 to include the right to a substitution of judge without cause, the legislature specifically eliminated the requirement that a party provide a reason for seeking a substitution. By the same token, the legislature saved the courts from inquiring into the motive behind a party's motion for substitution. The only exception recognized by the supreme court, of course, is when it is shown that the motion was made simply to delay or avoid trial. *In re Estate of Wilson*, 238 Ill. 2d 519, 557, 939 N.E.2d 426, 449 (2010).

¶ 44 Following passage of Public Act 87-949, section 1, this court decided *In re Marriage of Roach*, 245 Ill. App. 3d 742, 746-47, 615 N.E.2d 30, 33 (1993), which was the case that introduced the term "test the waters" to Illinois jurisprudence. However, in *Roach*, we dealt with trial court proceedings occurring before January 1993, and the old change of venue statute controlled our decision. While discussing the law under the old change of venue statute, we cited *Kozloff*, *Kenik*, and *Hader*, and made the following observation:

> "Even when the trial court has not ruled on a substantial issue, it appears the motion may be denied if the movant has had an opportunity to test the waters and form an opinion as to the court's reaction to his claim (*Kozloff*, 101 Ill. 2d at 531, 463 N.E.2d at 721; *Kenik*, 181 Ill. App. 3d at 271, 536 N.E.2d at 984; *Hader*[, 207 Ill. App. 3d at 1007, 566 N.E.2d at 740]), or if the movant is simply attempting to delay or avoid trial." *Roach*, 245 Ill. App. 3d at 746, 615 N.E.2d at 33.

Immediately following that sentence, we noted the following:

> "The legislature has amended section 2-1001 ***. Amended section 2-1001, which does not apply to this case, eliminates the necessity for the movant to recite that he fears the judge is prejudiced against him, and allows each party 'one substitution of judge without cause as a matter of right.' (735 ILCS 5/2-1001(a)(2)(i) (West 1992).) *** *It is interesting that amended section 2-1001 says nothing of situations where a movant has been able to test the waters*, or where the motion is filed simply for delay, although the

section does require the motion to be 'timely.' " (Emphasis added.) *Roach*, 245 Ill. App. 3d at 746-47, 615 N.E.2d at 33.

¶ 45       Six years after *Roach*, the "test the waters" doctrine resurfaced in the First District case of *In re Marriage of Abma*, 308 Ill. App. 3d 605, 720 N.E.2d 645 (1999). That case involved a divorce proceeding occurring under the new version of section 2-1001, but the appellate court nonetheless applied the doctrine alluded to in *Roach*. The First District stated, "[I]n *Roach*, the court also noted that even in the absence of a substantial ruling in the case, a motion for a change of venue may nonetheless be considered untimely if the parties have had an opportunity to discern the court's disposition toward the merits of the case." *Abma*, 308 Ill. App. 3d at 611, 720 N.E.2d at 650.

¶ 46       It appears the *Abma* court overlooked the context of our discussion in *Roach* regarding the "test the waters" doctrine. Our mention of that doctrine was an observation gleaned from case law under the old version of the statute, and not intended to reflect the amended version of section 2-1001(a)(2). Moreover, we viewed the new statute's silence regarding a movant's ability to "test the waters" as an indication that the legislature did not see fit to address that issue.

¶ 47       In *Scroggins v. Scroggins*, 327 Ill. App. 3d 333, 336, 762 N.E.2d 1195, 1198 (2002), we attempted to set the record straight regarding the "test the waters" doctrine, as follows:

"Under prior statutes allowing the automatic substitution of a judge, an inquiry could be made whether the motion was filed simply for delay or whether the movant had an opportunity to test the waters and form an opinion as to the court's reaction to his claim. [*Roach*, 245 Ill. App. 3d at 746-47, 615 N.E.2d at 33.] The present version of section 2-1001(a)(2), however, has adopted a new test. Under the present version, it is not necessary to allege that the judge is prejudiced against the defendant. [Citation.] Under the present version of section 2-1001(a)(2), the right to a substitution without cause must be 'timely exercise[d].' 735 ILCS 5/2-1001(a)(2) (West 2000). A party timely exercises his right if his motion 'is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case.' 735 ILCS 5/2-1001(a)(2)(ii) (West 2000); *Roach*, 245 Ill. App. 3d at 747, 615 N.E.2d at 33."

¶ 48       In *Advanta Leasing Services*, 333 Ill. App. 3d at 933, 776 N.E.2d at 261, we voiced our rejection of the "test the waters" doctrine more plainly, stating, "a movant's right to substitution of judge as of right is absolute, and the trial court does not have discretion to consider whether the movant had an opportunity to 'test the waters.' "

¶ 49       Despite our attempts in *Scroggins* and *Advanta* to clarify that the "test the waters" approach was no longer good law because the legislature amended section 2-1001, the floodgates had already been opened. The Fifth District adopted the "test the waters" terminology in *City of Granite City*, 333 Ill. App. 3d at 461, 775 N.E.2d at 650. Two years later, the Third District adopted the doctrine in *Gay*, 353 Ill. App. 3d at 343, 818 N.E.2d at 863. Even this court has been guilty of citing the "test the waters" doctrine, albeit in *dicta*, following *Scroggins* and *Advanta*. See *Curtis*, 394 Ill. App. 3d at 176, 914 N.E.2d at 253; *In re Austin D.*, 358 Ill. App. 3d 277, 281, 831 N.E.2d 1215, 1218 (2005).

¶ 50       The "test the waters" doctrine was rendered obsolete 20 years ago by introduction of the

right to a substitution of judge without cause under the new version of section 2-1001(a)(2). The doctrine not only does nothing to advance the functioning of section 2-1001(a)(2), it affirmatively frustrates its purpose. By inviting the trial judge to make the potentially nuanced, subjective determination of whether he has tipped his hand at some point during the proceedings, the doctrine undermines the movant's right to have the fate of his case placed in the hands of a different judge.

¶ 51 Moreover, from the position of the appellate court, consistent and certain application of the doctrine is nearly impossible. Justice McDade thoughtfully addressed this issue in her special concurrence in *Gay*, as follows:

"[O]ur standard of review is *de novo*, but even if we had a transcript of the proceedings, we would still be ignorant of inflection, facial expressions or body language that could more clearly indicate whether or not the judge had actually tipped his hand. We have no objective basis for making a meaningful judgment and are, therefore, totally reliant on the judge's own subjective recollection and reconstruction in reviewing his decision. This standard seems totally inappropriate for *de novo* review." *Gay*, 353 Ill. App. 3d at 345, 818 N.E.2d at 864 (McDade, J., specially concurring).

Justice McDade's concern is well illustrated in Brenda's brief to this court, in which she argues, "Plaintiff John Schnepf and his attorney *** had the opportunity to observe the Trial Court's posture and mannerisms which could have indicated her position regarding the arguments which counsel were presenting at that time." This might be true, but for all we know Judge Lagoski presided over the hearing like a champion poker player. Under a *de novo* review, we simply have no way of accounting for these potentially significant nonverbal factors.

¶ 52 Justice McDade articulated an additional, more fundamental flaw in the "test the waters" doctrine, as follows:

"It appears that an acknowledgment that one has 'tipped his hand' is tantamount to a concession that he has prejudged the case and is, therefore, biased. It seems to me that such a finding ought to mandate a recusal rather than militating against it. As it now stands, if the judge has *not* formed an opinion and given the parties some inkling of what that opinion is, then a party is able to take a recusal as a matter of right; if, on the other hand, the judge *has* formed an opinion before the evidence has been presented and has tipped his hand to that effect, he must remain as the judge in the case. While I understand and appreciate the need to discourage forum shopping, this result makes no sense to me ***." (Emphases in original.) *Id.* at 345-46, 818 N.E.2d at 864-65 (McDade, J., specially concurring).

We agree with Justice McDade's observations and take this opportunity to add some of our own.

¶ 53 First, the "test the waters" doctrine is inconsistent with the long-standing rule that section 2-1001(a)(2) of the Code is to be liberally construed, and if the motion "is timely, in proper form, and in compliance with the statute, the right to a change of venue in both civil and criminal cases is absolute." *Rosewood Corp.*, 57 Ill. 2d at 250, 311 N.E.2d at 675. Under the old version of the statute, the "test the waters" doctrine was seen by many as an appropriate

layer of judicial gloss intended to limit changes of venue to those necessary to remedy a party's sincere fear of prejudice. Freedom from judicial prejudice was the only stated purpose of the statute, and it was not inconsistent with a liberal construction to limit the statute to that purpose. Now, however, prejudice is irrelevant to section 2-1001(a)(2), and parties are no longer limited to that single basis for seeking a substitution of judge. Under a liberal construction of the current statute, parties are free to move for a substitution of judge as of right for whatever reason they wish, provided their purpose is not to delay or avoid trial (*Advanta*, 333 Ill. App. 3d at 932, 776 N.E.2d at 259-60). Accordingly, when the statutory conditions are met and there is no showing that substitution is sought to delay or avoid trial, judges have no authority to inquire into the movant's reason for seeking substitution and to deny the motion if that reason does not meet their approval.

¶ 54    Second, the concern over "judge shopping" is already addressed by the requirement that the motion be presented "before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case." 735 ILCS 5/2-1001(a)(2)(ii) (West 2008). By preventing a party from seeking substitution after the judge has made a substantial ruling, section 2-1001(a)(2)(ii) limits the party's ability to discern whether the judge is favorably disposed to their position. Granted, section 2-1001(a)(2)(ii) cannot prevent all instances of judge shopping. A judge might roll his eyes during a pretrial conference or do something else that reveals his opinion but does not foreclose a motion for substitution under section 2-1001(a)(2)(ii). However, the legislature has drawn a bright line with section 2-1001(a)(2)(ii). This bright line saves the trial and appellate courts from engaging in the nuanced, subjective determination of whether the trial judge had tipped his hand, and it provides certainty to litigants who may wish to exercise their right under section 2-1001(a)(2). The "test the waters" doctrine needlessly obscures an otherwise bright line.

¶ 55    Finally, we cannot accept a doctrine that would allow a trial judge to so easily, even inadvertently, extinguish a party's "absolute" right to a substitution without cause. Under the "test the waters" doctrine, a trial judge defeats a party's right under section 2-1001(a)(2) by doing anything that might give the party an opportunity to form an opinion as to the judge's views on the merits of the case. Even an opposing party could defeat the other party's right under section 2-1001(a)(2) by deliberately engaging in courtroom discussion in an effort to cause the judge to unwittingly express an opinion on the merits of the case. We do not believe the legislature intended to create such a vulnerable right, only to rest it in the hands of those who might wish to deny a party's use of that right.

¶ 56    Having now explicitly rejected the "test the waters" doctrine, we turn to the merits of the case before us.


¶ 57                B. The Trial Court Erred by Denying John's Motion for
                            Substitution of Judge as of Right

¶ 58    The record indicates that the only orders entered before John filed his motion for substitution of judge were related to scheduling and continuances, which are not considered substantial rulings. See *Scroggins*, 327 Ill. App. 3d at 336, 762 N.E.2d at 1198. Accordingly, the trial court erred by denying John's motion for a substitution of judge as of right.

¶ 59                              III. CONCLUSION

¶ 60        The trial court's orders following the improper denial of John's motion for substitution in March 2008, including the May 2009 ruling on the parties' interests in the property, are void. See *Aussieker*, 355 Ill. App. 3d at 500, 822 N.E.2d at 929. Accordingly, we vacate those orders and remand the case with directions to grant John's motion for substitution of judge as of right pursuant to section 2-1001(a)(2) of the Code. 735 ILCS 5/2-1001(a)(2) (West 2012).

¶ 61        Vacated in part and remanded with directions.