NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220267-U

NO. 4-22-0267

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 25, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.B., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
| Petitioner-Appellee, | ) | No. 19JA87 |
| v. | ) | |
| Isaac B. | ) | Honorable |
| Respondent-Appellant). | ) | John C. Wooleyhan, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices DeArmond and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, holding the trial court did not err in denying
respondent's motion for substitution of judge as of right.

¶ 2    Respondent, Isaac B., appeals the trial court's order involuntarily terminating his

parental rights as to A.B. (born November 11, 2019) upon finding that he was unfit and that

termination was in A.B.'s best interest. Isaac B. argues this order was a nullity because it was

entered after the trial court improperly denied his motion for substitution of judge as of right. We

affirm.

¶ 3                                  I. BACKGROUND

¶ 4    On November 15, 2019, a petition for adjudication of wardship was filed

concerning A.B. Karen B. and Norman B. were identified as A.B.'s parents and named as

respondents. The petition alleged A.B. was a newborn baby and was neglected in that he was in an environment injurious to his well-being. The petition alleged that Karen B. and Norman B.'s older child had been taken into protective custody and a termination hearing had been scheduled. The petition also alleged Karen B.'s parental rights as to two other children had previously been terminated. The trial court entered an order granting temporary custody of A.B. to the Department of Children and Family Services (DCFS).

¶ 5        On January 7, 2020, the trial court ordered Karen B. and Norman B. to submit to DNA testing to determine paternity. On February 4, 2020, the court entered an order noting that "another putative father has come forward" and ordering Isaac B. to undergo DNA testing.

¶ 6        On June 29, 2020, the trial court held an adjudicatory hearing. The court entered an order finding A.B. was neglected by Karen B. and Norman B. The matter proceeded to a dispositional hearing on October 6, 2020, and the court found Karen B. and Norman B. were unfit and unwilling to care for A.B. The court entered an order making A.B. a ward of the court and granting custody and guardianship of him to DCFS.

¶ 7        On January 20, 2021, a permanency hearing report was filed. The report indicated Isaac B. had been identified as the biological father of A.B. The report stated a DCFS employee had advised Isaac B. in October 2020 that he was A.B.'s biological father and could have visitation with A.B. as soon as he filled out consent paperwork. Isaac B. did not fill out the paperwork. The report indicated a caseworker tried to call Isaac B. "for monthly contact" in November and December 2020. The caseworker was unable to reach Isaac B., and Isaac B. did not return her calls.

¶ 8        On January 28, 2021, a summons was issued for Isaac B. On March 2, 2021, the sheriff's office filed a return of summons, indicating it had been unable to serve Isaac B. after

two attempts. Thereafter, Isaac B. was served by publication on April 28, 2021.

¶ 9        On June 14, 2021, a permanency hearing was held. The trial court noted Isaac B. had been served by publication. The court found that a permanency report that had been filed prior to the hearing showed "none of the parents" were involved in any services, there had not been "any progress for any type of a return home goal," and there had been "no cooperation by any of the parents with the caseworkers." At the State's request, the court changed A.B.'s permanency goal to "substitute care pending termination."

¶ 10       On June 23, 2021, the State filed a motion to terminate Karen B. and Isaac B.'s parental rights. The motion alleged Isaac B. had failed to maintain a reasonable degree of interest, concern, or responsibility as to A.B.'s welfare.

¶ 11       On August 27, 2021, Isaac B. appeared for the first time, and the public defender's office was appointed to represent him.

¶ 12       On December 3, 2021, the guardian *ad litem* who represented A.B. filed a motion to terminate sibling visitation, which sought to terminate visitation between A.B. and some of his half-siblings, who were Isaac B.'s biological children. The motion alleged A.B. had no prior relationship with these half-siblings, "return home" had been ruled out as a permanency goal for A.B., and a motion for termination of parental rights was pending as to A.B. The motion also alleged A.B.'s half-siblings were in the care of DCFS and a termination hearing had been set in their cases. The motion stated that, due to A.B.'s young age, "continued engagement with people who are not likely to remain part of his life" impeded the goal of achieving permanence and stability for A.B.

¶ 13       On December 22, 2021, a hearing was held on the motion to terminate sibling visitation. Alison Ketsenburg, a DCFS employee, testified she supervised the caseworker

assigned to A.B.'s case. She stated A.B. was two years old and had been in the care of DCFS virtually since his birth. He had never resided with either of his biological parents. The guardian *ad litem* asked Ketsenburg if A.B. had ever met Isaac B. She replied, "I do not believe so." Ketsenburg testified A.B. had recently begun having visitation with Isaac B.'s adolescent daughters, who were A.B.'s half-siblings. The visitation had only begun recently because the caseworker assigned to A.B.'s case recently learned after a review meeting that A.B. had these half-siblings, who were in the care of another DCFS agency. DCFS employees planned to continue holding visitation between A.B. and his half-siblings twice per month.

¶ 14   Isaac B.'s attorney did not present any evidence. During the argument portion of the hearing, Isaac B.'s counsel stated: "I have not had a chance to speak to my client regarding the motion that has been filed. However, based on it being both his children, and if he were to somehow at one point gain custody of the children, I think that we would be objecting to the motion." The court took the matter under advisement.

¶ 15   On December 29, 2021, the trial court entered an order granting the motion to terminate sibling visitation. The court found A.B. was two years old and had never met Isaac B. The court stated that, due to A.B.'s age and "no previous relationship with the natural father, or with the two half siblings," it was in A.B.'s best interest to not have visitation with his half-siblings until further order of the court.

¶ 16   On January 21, 2022, Isaac B. requested to discharge his counsel and represent himself. The trial court permitted him to do so.

¶ 17   On February 8, 2022, Isaac B., *pro se*, filed a motion for substitution of judge as of right.

¶ 18   On March 11, 2022, the trial court held a hearing on the State's motion to

- 4 -

terminate Isaac B. and Karen B.'s parental rights. Before the hearing commenced, the court heard and denied Isaac B.'s motion for substitution of judge as of right. The court stated substitution as of right was unavailable to Isaac B. because the case had been pending for "some time" and it had already made rulings as to adjudication and disposition.

¶ 19 At the conclusion of the termination hearing, the court found the State had proven by clear and convincing evidence Isaac B. was unfit in that he failed to maintain a reasonable degree of interest, concern, or responsibility as to A.B.'s welfare. The court also found the State had shown by a preponderance of the evidence that termination of Isaac B.'s parental rights was in A.B.'s best interest. The court entered an order terminating Isaac B.'s parental rights, and this appeal followed.

¶ 20                                II. ANALYSIS

¶ 21 Isaac B. argues on appeal his motion for substitution of judge as of right should have been granted and, consequently, all subsequent orders in the case are void. Specifically, Isaac B. contends the adjudicatory and dispositional orders were entered by the trial court before he entered his appearance and, consequently, were irrelevant to his motion for substitution of judge as of right. He argues his motion was timely and proper because the court did not rule on a substantial issue between the time he entered his appearance and when he filed his motion for substitution of judge as of right.

¶ 22 Section 2-1001(a)(2) of the Code of Civil Procedure (735 ILCS 5/2-1001(a)(2) (West 2020)) provides that a substitution of judge may be had "[w]hen a party timely exercises his or her right to a substitution without cause as provided in this paragraph (2)." That section further provides:

"(i) Each party shall be entitled to one substitution of judge without cause

- 5 -

as a matter of right.

(ii) An application for substitution of judge as of right shall be made by motion and shall be granted if it is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case, or if it is presented by consent of the parties.

(iii) If any party has not entered an appearance in the case and has not been found in default, rulings in the case by the judge on any substantial issue before the party's appearance shall not be grounds for denying an otherwise timely application for substitution of judge as of right by the party." *Id.*

¶ 23    "A substantial issue is one relating directly to the merits of the case." *Schnepf v. Schnepf*, 2013 IL App (4th) 121142, ¶ 26. "[T]he provisions of section 2-1001 are to be liberally construed to promote rather than defeat the right of substitution." *Bowman v. Ottney*, 2015 IL 119000, ¶ 17. However, "the principle of liberal construction cannot excuse a party from complying with the statute's explicit requirements." *Id.* "Illinois courts have held that, when properly made, a motion for substitution of judge as a matter of right is absolute, and the circuit court has no discretion to deny the motion." *Id.*

¶ 24    In the instant case, at the time Isaac B. entered his appearance, A.B. had already been adjudicated neglected and made a ward of the court, and the State had filed a motion to terminate Isaac B.'s parental rights. Accordingly, at that time, the "merits of the case" included whether (1) Isaac B. was unfit based on his alleged failure to maintain a reasonable degree of interest, concern, or responsibility as to A.B.'s welfare and (2) if so, whether it was in A.B.'s best interest to terminate Isaac B.'s parental rights. See 705 ILCS 405/2-29(2) (West 2020); 750 ILCS 50/1(D)(b) (West 2020).

¶ 25    We find that the trial court did not err in denying Isaac B.'s motion for substitution of judge as of right because its ruling on the motion to terminate sibling visitation, which was entered after Isaac B. appeared, directly related to the merits of the case. The guardian *ad litem* filed the motion to terminate A.B.'s visitation with Isaac B.'s other children on the basis that A.B. had no relationship with them. The motion also stated that these half-siblings were unlikely to remain in A.B.'s life, as motions to terminate Isaac B.'s parental rights had been filed in both A.B.'s case and his half-siblings' cases. Although Isaac B.'s counsel indicated she had not spoken with Isaac B. about the motion, she objected to it on his behalf. In granting the motion, the court made the express findings that A.B. had never met Isaac B. and had no prior relationship with Isaac B. or his other children. Thus, in ruling on the motion to terminate sibling visitation, the trial court "did not merely enter a procedural order regarding the mechanics of the case." *In re J.S.*, 2020 IL App (1st) 191119, ¶ 57. Rather, the court considered the extent of Isaac B.'s involvement in A.B.'s life, which was a question directly related to whether Isaac B. was unfit due to his alleged failure to maintain a reasonable degree of interest, concern, or responsibility as to A.B.

¶ 26    In reaching our holding, we acknowledge that the trial court erroneously based its denial of Isaac B.'s motion to substitute judge as of right on the fact that the adjudicatory and dispositional orders were prior rulings on substantial issues. Both of these orders were entered before Isaac B. entered his appearance or was served by publication, and the court had not found Isaac B. to be in default. See 735 ILCS 5/2-1001(a)(2)(iii) (West 2020). However, "we may affirm the trial court's decision on any basis established by the record." *In re K.B.*, 314 Ill. App. 3d 739, 751 (2000).

¶ 27    III. CONCLUSION

¶ 28        For the reasons stated, we affirm the trial court's judgment.

¶ 29        Affirmed.